JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Richard H. Engman (RE 7861)

- and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-7045
Facsimile:  (216) 579-0212
Nicholas M. Miller (NM 7516)

Attorneys for Debtors and
  Debtors in Possession

<u>Hearing Date</u>:  October 23, 2007 at 10:00 a.m.
<u>Objection Deadline</u>:  October 12, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re                                                       :   Chapter 11
                                                            :
Levitz Home Furnishings, Inc., *et al.,*                    :   Case No. 05-45189 (BRL)
                                                            :
                                    Debtors.                :   (Jointly Administered)
                                                            :
------------------------------------------------------------x

**NOTICE OF HEARING ON JOINT MOTION OF THE DEBTORS AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT
TO SECTIONS 105(a), 349 AND 1112(b) OF THE BANKRUPTCY CODE, FOR THE
ENTRY OF AN ORDER (A) APPROVING PROCEDURES FOR THE DISTRIBUTION
OF TRUST FUNDS TO UNSECURED CREDITORS AND THE DISMISSAL OF THE
<u>DEBTORS' CHAPTER 11 CASES AND (B) GRANTING CERTAIN RELATED RELIEF</u>**

**PLEASE TAKE NOTICE THAT** a hearing to consider the

Joint Motion of the Debtors and the Official Committee of
Unsecured Creditors, Pursuant to Sections 105(a), 349 and 1112(b)
of the Bankruptcy Code, for the Entry of an Order (A) Approving
Procedures for the Distribution of Trust Funds to Unsecured
Creditors and the Dismissal of the Debtors' Chapter 11 Cases and
(B) Granting Certain Related Relief (the "Motion")

shall be held before the Honorable Burton R. Lifland, United States Bankruptcy Judge, in

Room 625 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One

Bowling Green, New York, New York 10004, on October 23, 2007 at 10:00 a.m. (New York

time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE THAT** responses or objections, if any,

to the Motion and the relief to be granted therein must be made in writing, conform to the

Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy

Court Southern District of New York, and be filed with the Bankruptcy Court electronically in

accordance with General Order M-242 (which General Order, along with the User's Manual for

the Electronic Case Filing System, can be found at www.nysb.uscourts.gov, the official website

for the Bankruptcy Court) by registered users of the Bankruptcy Court's filing system and, by all

other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

Wordperfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers) and shall be served in accordance with General Order M-242 upon:

(i) attorneys for the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017, Attn:

Richard H. Engman, Esq., (ii) the Office of the United States Trustee for the Southern District of

New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004,

Attn:  Greg M. Zipes, Esq. and Paul K. Schwartzberg, Esq., and (iii) attorneys for the Official

Committee of Unsecured Creditors, Kronish Lieb Weiner & Hellman LLP, 1114 Avenue of the

Americas, New York, New York 10036, Attn: Jay R. Indyke, Esq. and Cathy Hershcopf, Esq., so

as to be actually received by no later than 4:00 p.m. (New York time) on October 12, 2007.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Motion may be

obtained on Kurtzman Carson Consultants LLC's website at www.kccllc.net/levitz.

Dated:    September 28, 2007
          New York, New York

                                        Respectfully submitted,


                                        /s/ Nicholas M. Miller
                                        Richard H. Engman (RE 7861)
                                        JONES DAY
                                        222 East 41st Street
                                        New York, New York  10017
                                        Telephone:  (212) 326-3939
                                        Facsimile:  (212) 755-7306

                                         - and -

                                        Nicholas M. Miller (NM 7516)
                                        JONES DAY
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, Ohio  44114
                                        Telephone:  (216) 586-3939
                                        Facsimile:  (216) 579-0212

                                        ATTORNEYS FOR DEBTORS AND
                                        DEBTORS IN POSSESSION

<u>Hearing Date</u>:  October 23, 2007 at 10:00 a.m.
<u>Objection Deadline</u>:  October 12, 2007 at 4:00 p.m.

JONES DAY                                           COOLEY GODWARD KRONISH LLP
222 East 41st Street                                1114 Avenue of the Americas
New York, New York  10017                           New York, New York  10036
Telephone:  (212) 326-3939                          (212) 479-6000
Facsimile:  (212) 755-7306                          Jay R. Indyke (JI 0353)
Richard H. Engman (RE 7861)                         Cathy Hershcopf (CH 5875)
                                                    Jeffrey L. Cohen (JC 2556)
  - and –
                                                    Attorneys for Official Committee
JONES DAY                                           of Unsecured Creditors
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Nicholas M. Miller (NM 7516)

Attorneys for Debtors and
  Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re                                   :    Chapter 11
                                        :
Levitz Home Furnishings, Inc. *et al*., :    Case No. 05-45189 (BRL)
                                        :
                                        :    (Jointly Administered)
            Debtors.                    :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO**
**SECTIONS 105(a), 349 AND 1112(b) OF THE BANKRUPTCY CODE,**
**FOR THE ENTRY OF AN ORDER (A) APPROVING PROCEDURES**
**FOR THE DISTRIBUTION OF TRUST FUNDS TO UNSECURED**
**CREDITORS AND THE DISMISSAL OF THE DEBTORS' CHAPTER 11**
**CASES AND (B) GRANTING CERTAIN RELATED RELIEF**

TO THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

Levitz Home Furnishings, Inc. ("LHFI"), individually and together with its affiliated debtors and debtors in possession (collectively with LHFI, the "Debtors"),[1] and the Official Committee of Unsecured Creditors in the above-captioned case (the "Committee", and together with the Debtors, the "Movants"), hereby submit this joint motion (the "Motion") requesting entry of an order, pursuant to sections 105(a), 349 and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code"), (i) approving procedures (collectively, the "Distribution and Dismissal Procedures") for the resolution of all unsecured claims against the Debtors, the distribution of funds held in trust for the benefit of unsecured creditors and the ultimate dismissal of the Debtors' bankruptcy cases and (ii) granting certain related relief.  In support of this Motion, the Movants respectfully represent as follows:

## BACKGROUND

### A.    The Chapter 11 Filings and Jurisdiction

1.    On October 11, 2005, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2]  By an order entered on October 12, 2005, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

---

[1]    The Debtors are comprised of the following seven entities:  LHFI; Levitz Furniture Company of the Midwest, Inc.; Levitz Furniture Company of Washington, Inc.; Levitz Furniture Corporation; Levitz Furniture LLC; Seaman Furniture Company, Inc.; and Seaman Furniture Company of Pennsylvania, Inc.  The chapter 11 cases of the following six former debtors were dismissed by an order of the Court entered on December 21, 2006 (Docket No. 1084):  Paralax Development Industries, Inc.; John M. Smyth Company; Levitz Furniture Company of Delaware, Inc.; Levitz Shopping Service, Inc.; RHM, Inc.; and Seaman Furniture Company of Union Square, Inc.

[2]    Because the Debtors' chapter 11 cases were filed prior to the effective date (i.e., October 17, 2005) of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act"), references to the Bankruptcy Code contained herein refer to the pre-2005 Act Bankruptcy Code, unless otherwise noted.

2.       The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       On October 21, 2005, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee, pursuant to section 1102 of the Bankruptcy Code.

4.       This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.       The DIP Facility**

5.       On the Petition Date, the Debtors' filed a motion for approval of an $80 million senior secured financing facility (the "DIP Facility") with General Electric Capital Corporation ("GE Capital") and Prentice Capital Management, LP ("Prentice" and, together with GE Capital, the "DIP Lenders").  By order dated November 10, 2005 (Docket No. 203) (the "DIP Order"), this Court gave final approval to the Debtors' DIP Facility.

**C.       The Purchase Agreement and Sale Order**

6.       On November 11, 2005, the Debtors filed a motion (Docket No. 218) seeking approval of an orderly, expeditious, open and fair process for the sale of assets to the highest bidder through auction (the "Bidding Procedures").  On November 22, 2005, the Court entered an order (Docket No. 302), among other things:  (a) approving the Bidding Procedures; (b) authorizing an auction to be held on November 30, 2005 (the "Auction"); and (c) scheduling a hearing to consider entry of an order approving the ultimate sale to the successful bidder.

7.       Pursuant to the Bidding Procedures, the Debtors announced at the Auction that they had received only one qualified bid, which was submitted by PLVTZ, LLC ("PLVTZ"), an affiliate of Prentice, and the Pride Capital Group (d/b/a Great American Group) (collectively with PLVTZ, the "Purchaser").[3]  On December 14, 2005 the Court entered an order (Docket No. 514) (the "Sale Order") approving the sale of substantially all of the Debtors' assets (the "Purchased Assets") to the Purchaser.

8.       The Sale Order authorized, among other things, the sale and transfer of all of the Debtors' rights to designate the ultimate assignee of all of the Debtors' right, title and interest in and to certain nonresidential real property leases (each, a "Lease") through May 31, 2006 (the "Lease Designation Deadline").  As of the date of this Motion, all but one of the Debtors' Leases have been either assumed and assigned or rejected (or so designated by the Purchaser), and the Court has entered an order extending the Lease Designation Deadline for the lone remaining Lease.

9.       Moreover, the Debtors have ceased retail operations, are no longer conducting their ordinary business, no longer have any employees and are in the process of winding up their affairs by, among other things, awaiting notice from PLVTZ regarding the remaining Lease and processing and filing final state sales tax returns.  Each of the Debtors retained Walker Truesdell & Associates ("Walker Truesdell") as its winddown officer to facilitate the winddown process, pursuant to an order of the Court dated March 15, 2006 (Docket No. 775).

---

[3]     PLVTZ also is a lender under the Debtors' DIP Facility.

10.      As consideration for the Purchased Assets, the Purchaser paid off the lenders senior to PLVTZ in the DIP Facility, and PLVTZ forgave $7 million of the $25 million owed to it by the Debtors under the DIP Credit Agreement.  See Purchase Agreement § 3.1 at 24.

11.      The Sale Order required the Purchaser to assume certain liabilities and pay certain administrative expenses.  The Purchaser paid certain administrative expenses in excess of those it was required to pay pursuant to the Sale Order.  The Movants are unaware of any unpaid administrative expenses, other than professional fees and certain administrative rent claims that the Purchaser intends to resolve on or before the entry of any order granting this Motion.

12.      The sale proceeds were insufficient to satisfy all of the Debtors' remaining obligations to secured parties under the DIP Facility.  Specifically, PLVTZ continues to hold an unsatisfied claim of approximately $11.25 million under the DIP Facility.  Accordingly, the estate does not have any cash on hand, and the Debtors will be unable to confirm a plan in these cases.

**D.      The General Unsecured Creditor Trust**

13.      As part of the sale, and at the Committee's insistence, PLVTZ agreed to carveout certain funds that PLVTZ otherwise would have been entitled to receive as a secured lender under the DIP Facility.  These funds have been held in a General Unsecured Creditors Trust (the "GUC Trust") for the benefit of unsecured creditors.  The term sheet establishing the GUC Trust is annexed as Exhibit "C" to the Sale Order and identifies a range of sharing opportunities to fund the GUC Trust from proceeds that otherwise would be distributed to PLVTZ (as either a DIP Lender or the Purchaser of substantially all of the Debtors' assets).  As a

result of these sharing opportunities, over the course of these cases the GUC Trust has accumulated approximately $580,000 for the benefit of unsecured creditors (the "GUC Funds").

14.     The Movants have determined that no significant additional assets are or will be available to fund the GUC Trust.  Among other things, the Committee reviewed prepetition payments to creditors and analyzed other potential litigation targets and concluded that there would be no substantial net benefit to unsecured creditors to pursue preference claims or other avoidance actions.[4]  Moreover, the proceeds of any such avoidance actions are included among the Purchased Assets acquired by PLVTZ in the Sale Order.  Consequently, the Committee has determined – and the Debtors agree – that there are no material unencumbered funds to be obtained for the benefit of unsecured creditors.

15.     Based upon a review of Schedule F to each of the Debtors' schedules of assets and liabilities filed with the Bankruptcy Court on December 27, 2005 (collectively, "Schedule F"), and the proofs of claim filed in these cases, the Movants estimate that the unsecured claims against the Debtors are approximately 2250 in number and $250 million in amount.[5]  Based on approximately $580,000 in current GUC Funds, the Movants anticipate making a *pro rata* distribution of approximately 0.3%, or three tenths of one percent, to unsecured creditors.[6]

---

[4]     In addition to analyzing preference claims and other avoidance actions, the Committee closely monitored litigation initiated by certain bondholders against, among others, the former directors, officers and majority shareholders of LHFI for, *inter alia*, breach of fiduciary duty.  Had this litigation survived the motion to dismiss phase, the Committee was poised to initiate a similar action for the benefit of the Debtors' unsecured creditors.  However, on February 22, 2007, the aforementioned litigation was dismissed with prejudice by the United States District Court for the Southern District of New York.  See Xerion Partners I, LLC *et al*. v. Resurgence Asset Mgmt., LLC *et al*., Case No. 06-2434 (S.D.N.Y. Feb. 22, 2007).

[5]     These estimates are based on the cumulative total of Schedule F claims – excluding duplicates.

[6]     Subject to change through the Claims Resolution Process described herein.

## RELIEF REQUESTED

### A.   The Claims Resolution Process

16.    As set forth above, the Movants seek the entry of an order, among other things, approving procedures for the resolution of all unsecured claims against the Debtors' estates (the "Claims Resolution Process"), which process (described below) will permit a *pro rata* distribution (the "Distribution") to holders of allowed unsecured claims.  To facilitate the Claims Resolution Process and the Distribution, the Movants seek the appointment of Walker Truesdell as trustee of the GUC Trust (the "GUC Trustee"), pursuant to the terms of the proposed order attached hereto as Exhibit D (the "Proposed Distribution and Dismissal Procedures Order").  In addition, the Movants request that the Court authorize the GUC Trustee to utilize up to $70,000 from the GUC Funds (the "Holdback") to pay reasonable expenses associated with the Claims Resolution Process, the Distribution and any other actions taken pursuant to the Distribution and Dismissal Procedures (the "Distribution and Dismissal Expenses").

17.    Attached hereto as Exhibit A is list of all persons and entities that the Movants believe have, or potentially have, unsecured claims against the Debtors' estates (collectively, the "Potential Claimants").[7]  The Potential Claimants are comprised of the following:

- creditors listed on Schedule F;
- creditors that have filed proofs of claim with the Bankruptcy Court as of the date of this Motion, including customer claims;
- parties to litigation or threatened litigation with the Debtors;
- parties to rejected leases with the Debtors;

---

[7]    The Movants recognize that the amounts listed on Exhibit A could change, for example, if it is determined that, pursuant to the Distribution and Dismissal Procedures, additional creditors should have been included or the amounts are incorrect.

- parties to executory contracts with the Debtors;

- noteholders who did not settle with the Committee pursuant to the terms of the Sale Order; and

- certain governmental entities, including the IRS, the SEC and certain state taxing authorities.

18.     The Movants propose to commence the Claims Resolution Process by serving the Potential Claimants with a notice, substantially in the form attached hereto as Exhibit B (the "Proposed Distribution Notice") within five business days after entry of any order approving this Motion.  As set forth on the attached Exhibit B, the Proposed Distribution Notice will, among other things:

- provide general case information, including the estimated amount of the anticipated distribution;

- include a separate schedule with the Potential Claimant's claim information, including the proposed claim amount and whether the claim is disputed, contingent or unliquidated;

- give instructions for filing an objection to the Proposed Distribution Notice, including the mailing address for the GUC Trustee and the objection deadline;[8] and

- include contact information in the event the Potential Claimant has questions regarding the Claims Resolution Process or requires hard copies of claim forms or related court documents.

19.     Because the GUC Funds are limited, the Movants do not anticipate an extensive claims reconciliation process.  If a Potential Claimant or other party-in-interest (a) disputes any claim information contained in the Proposed Distribution Notice, (b) wishes to assert a claim that is not reflected on the Proposed Distribution Notice or (c) objects to or seeks

---

[8]    Certain creditors and potential creditors have been exempted from the claim filing requirement, including: (a) those who agree with the identified amount of undisputed, noncontingent and liquidated claims; (b) creditors whose claims have been satisfied; (c) claimants whose claims are based solely on ownership of stock in one of the Debtors; (d) former directors and officers holding claims for indemnity or contribution; and (e) any Debtor holding a claim against another Debtor.

reconsideration of the relief granted in any order granting this Motion, such Potential Claimant

or other party-in-interest (the "Objecting Party") must mail or e-mail its claim or objection with

documentation supporting its claim or objection (each a "Claim Objection") on or before

December 14, 2007 (the "Objection Deadline") to the GUC Trustee at Walker Truesdell &

Associates, 380 Lexington Avenue, Suite 1014, New York, New York 10168 (Attn: Sharon Roth,

e-mail: sroth@walkertruesdell.com).  In any Claim Objection, the Objecting Party must state the

grounds with particularity.

   20. The GUC Trustee and counsel to the Committee shall review all Claim

Objections and supporting documentation timely submitted by an Objecting Party and consult

with the Objecting Party in order to attempt to resolve any disputes regarding the Claim

Objection.  If the GUC Trustee, counsel to the Committee and the Objecting Party cannot agree

on a resolution, then counsel to the Committee shall notice the matter for hearing for ultimate

determination by the Court, which hearing shall take place on or before January 31, 2008.  Any

claim allowed pursuant to the foregoing Claims Resolution Process shall be deemed an "Allowed

Unsecured Claim."  Additionally, the Movants seek a determination by the Court that any

Potential Claimant or other party-in-interest that does not timely file a Claim Objection shall be

barred from challenging the relief requested herein.

**B. The Distribution**

   21. Upon completion of the Claims Resolution Process, the Movants propose

to make the Distribution to holders of Allowed Unsecured Claims (collectively, "Allowed

Unsecured Claimants") (*i.e.* the beneficiaries of the GUC Trust).  For administrative convenience

and to conserve expenses, the Movants propose making only a single distribution of the GUC

Funds, and request authority to refrain from making any *de minimus* distribution that would

result in a distribution of less than $25 to an Allowed Unsecured Claimant.  In addition, the

Movants request that any distributed check(s) that have not been claimed and/or cashed within 90 days after distribution of the check (the "Check Cashing Period") be deemed void, and the corresponding claim be disallowed.  Furthermore, the Movants request that any GUC Funds that remain after expiration of the Check Cashing Period be used to pay any Distribution and Dismissal Expenses that exceed the Holdback, if any, and, thereafter, to be donated to a recognized charitable organization that (a) has no affiliation with the GUC Trustee or estate professionals, (b) is dedicated in some way to improving the bankruptcy system or providing services to those in need of the bankruptcy process and (c) is acceptable to both the GUC Trustee and counsel to the Committee.

**C.   The Notice of Distribution and Proposed Dismissal**

22.     Finally, the Movants request dismissal of the Debtors' chapter 11 cases after the filing of a notice of distribution and proposed dismissal substantially in the form attached hereto as Exhibit C (the "Notice of Distribution and Proposed Dismissal").  As set forth on the attached Exhibit C, the Notice of Distribution and Proposed Dismissal, among other things, will (a) verify that all unsecured claims have been resolved, (b) identify the amount of all Allowed Unsecured Claims, (c) give the total amount distributed from the GUC Trust and the *pro rata* distribution percentage on account of the Allowed Unsecured Claims, (d) identify all Distribution and Dismissal Expenses, (e) confirm that all Leases have been assumed and assigned or rejected, and (f) confirm that all U.S. Trustee quarterly fees have been paid.  Within five business days after filing the Notice of Distribution and Proposed Dismissal, the Committee may submit to the Court a proposed order providing for the dismissal of the Debtors' chapter 11 cases.

## APPLICABLE AUTHORITY

23.     The Court should approve the Distribution and Dismissal Procedures

because the Debtors (a) are unable to bear the administrative burden of effectuating a plan of

reorganization and distributing funds to the Debtors' unsecured creditors and (b) have no

remaining estate assets to administer.

24.     Under section 1112(b) of the Bankruptcy Code, a court may dismiss a

debtor's chapter 11 case "for cause."  11 U.S.C. § 1112(b); In re Albany Partners, Ltd., 749 F.2d

670, 674 (11th Cir. 1984); In re Blunt, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  Section

1112(b) of the Bankruptcy Code states, in pertinent part:  " . . . on request of any party in interest

or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court

may . . . dismiss a case under this chapter . . . for cause . . . ."  A determination of cause is made

by the court on a case-by-case basis.  Albany Partners, 749 F.2d at 674.  In addition, the decision

to dismiss a case is particularly delegated to the bankruptcy court's sound discretion.  See In re

Camden Ordinance Mfg. Co. of Arkansas, Inc., 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999)

(citing In re Atlas Supply Corp., 837 F.2d 1061, 1063 (5th Cir. 1988)).  Therefore, it is clear that

the Court is authorized to dismiss the Debtors' chapter 11 bankruptcy cases upon a showing of

"cause."

25.     The legislative history of section 1112(b) of the Bankruptcy Code and

relevant case authority indicate that a court has wide discretion to use its equitable powers to

dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989,

95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; see also In re Preferred

Door Co., 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a

bankruptcy case); In re Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991) (stating

that determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); In re Koerner, 800 F.2d 1358, 1367 & n. 7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); Albany Partners, 749 F.2d at 674 (same).

26.     Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of 10 grounds for dismissal.  11 U.S.C. § 1112(b)(1)-(10); Frieouf v. U.S., 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is nonexhaustive); Blunt, 236 B.R. at 864 (same).  One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]."[9]  11 U.S.C. § 1112(b)(2); Preferred Door Co., 990 F.2d at 549; Sullivan Cent. Plaza I, 935 F.2d at 728.  Here, the Court may dismiss the Debtors' chapter 11 bankruptcy cases because the Debtors are unable to effectuate a plan. 11 U.S.C. § 1112(b)(5).

27.     Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist."  See Preferred Door, 990 F.2d at 549 (quoting Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); Blunt, 236 B.R. at 865 (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent).

28.     Here, it is simply not possible or practical to effectuate a plan of reorganization because the Debtors have liquidated their assets and have no funds or

---

[9]     In addition to the Debtors, the Committee is a party-in-interest in the Debtor's Chapter 11 proceeding.  11 U.S.C. § 1109(b); In re Piper Aircraft Corp., 244 F.2d 1289, 1303 n.11 (11th Cir. 2001) (finding that a creditors committee is a party in interest in a chapter 11 bankruptcy proceeding).

unencumbered assets to pay any administrative expenses that might accrue. All of the Debtors'

inventory has been sold, and the Debtors no longer have any retail stores. As such, there is no

business to reorganize. By continuing in bankruptcy, the Debtors could incur administrative

expenses beyond their ability to pay. In sum, the Movants have met their burden of proof to

show that cause exists to dismiss the Debtors' chapter 11 bankruptcy cases under section 1112(b)

of the Bankruptcy Code due to the inability to effectuate a plan of reorganization.

29.     Once a court determines that cause exists to dismiss a chapter 11 case,

the court must also evaluate whether dismissal is in the best interests of the creditors and of the

estate. See In re Superior Sliding & Window, Inc., 14 F.3d 240, 243 (4th Cir. 1994); In re

Mazzocone, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), aff'd 200 B.R. 568 (E.D. Pa. 1996); In re

Warner, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988). A variety of factors demonstrate that it is in

the best interest of the creditors and the Debtors' estates to dismiss the chapter 11 cases and

authorize distribution of the GUC Funds to the Debtors' unsecured creditors, as contemplated by

the Motion.

30.     Among other things, a dismissal of a chapter 11 bankruptcy case meets

the best interests of the creditors test where a debtor has nothing to reorganize and the debtor's

assets are fixed and liquidated. See In re BTS, Inc., 247 B.R. 301, 310 (Bankr. N.D. Okl. 2000);

In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 245 B.R. 794, 799 (E.D. Pa. 2000) (finding

that a reorganization to salvage business which ceased business was infeasible); In re Brogdon

Inv. Co., 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing a chapter 11 bankruptcy

proceeding in part where there was "simply nothing to reorganize" and no reason to continue the

reorganization).

31.     As explained above, the Debtors have nothing left to reorganize.  As of the date of this Motion, virtually all of the Debtors' assets have been liquidated.  The only significant remaining task is for the GUC Trustee and counsel to the Committee to distribute GUC Funds, which funds are not property of the Debtors' estates by virtue of the Sale Agreement (and the DIP Lenders' agreement to forego recovery of the GUC Funds for the benefit of unsecured creditors).  In re SPM Mfg. Corp., 984 F.2d 1305 (1st Cir. 1993) (holding that a secured creditor may share proceeds it is otherwise entitled to receive with unsecured creditors); In re MCorp. Fin., Inc., 160 B.R. 941 (S.D. Tex. 1993) (holding that a senior creditor may share its proceeds with specified junior creditors so long as junior creditors not receiving distribution receive at least as much as they would in a hypothetical chapter 7 without the sharing); In re World Health Alternatives, Inc., 344 B.R. 291 (Bankr. D. Del. 2006) (holding that a secured creditor may carve-out funds from its collateral for the benefit of unsecured creditors in exchange for committee's withdrawal of its objection to motion to sell substantially all of debtor's assets); In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001) (holding that the secured lender's distribution to management did not preclude confirmation of the plan).  Thus, dismissal of the Debtors' chapter 11 cases is in the best interest of the creditors because the Debtors' operations no longer exist, and the GUC Funds are immediately available for distribution to the Debtors' unsecured creditors.

32.     In addition, dismissal is proper because the alternative – conversion to chapter 7 – is impractical.  One element of the best interest of the "estate" focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.  In re Clark, 1995 WL 495951, at 5 (N.D. Ill. 1995); In re Staff Inv. Co., 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the interests of the estate is the maximization of its value as an

economic enterprise.  See id.  Here, dismissal of the Debtors' cases will maximize the value of

the Debtors' estates because conversion to a chapter 7 liquidation and appointment of a trustee

would impose significant and unnecessary additional administrative costs upon the Debtors'

estates.  Dismissal of the Debtors' chapter 11 bankruptcy cases is preferred in this instance

because the Debtors do not have any significant remaining duties, and the GUC Trustee and

counsel to the Committee have only one remaining relatively simple administrative duty –

distribution of the GUC Funds to the Allowed Unsecured Claimants.

33.    Finally, all parties in interest agree that dismissal is the best alternative.

The best interests of creditors test is met where interested parties, other than the debtor, agree

that dismissal is the proper disposition of the case.  See Camden Ordinance Arkansas, Inc.,

245 B.R. at 798; Mazzocone 183 B.R. at 411.  Here, the Court should dismiss the Debtors'

chapter 11 bankruptcy cases because the Committee and the Debtors both favor dismissal.

In addition, the U.S. Trustee has indicated that it has no objection to the relief requested herein.

Thus, the Debtors' bankruptcy proceedings should be dismissed because all interested parties

concur that dismissal is warranted.

34.    The Distribution and Dismissal Procedures represent the parties'

cooperative efforts at reaching a solution that benefits all of the creditors within the confines of

the Bankruptcy Code.  Authorizing distribution of the GUC Funds and allowing dismissal of the

Debtors' bankruptcy cases simply furthers the Bankruptcy Code's goal of efficient administration

of the Debtors' bankruptcy estates to maximize the return to unsecured creditors.

## NOTICE

35.        Pursuant to the Court's order dated October 11, 2005 establishing notice

procedures in this chapter 11 case, notice of this Motion will be given to (a) the Special Service

List established pursuant to this Court's Administrative Order Establishing Case Management

and Scheduling Procedures (Docket No. 73) and (b) parties that have requested service of papers

pursuant to Bankruptcy Rule 2002.  The Movants respectfully submit that no other or further

notice is required.

## NO PRIOR REQUEST

36.        No prior request for the relief sought in this Motion has been made to this

or to any other Court.

**WHEREFORE,** the Movants respectfully request that this Court enter an order

(i) approving the Distribution and Dismissal Procedures, as set forth in the Proposed Distribution

and Dismissal Procedures Order, and the ultimate dismissal of the Debtors' chapter 11 cases and

(ii) granting such other and further relief as this Court deems just and proper.

Dated:   September 28, 2007
      New York, New York

Respectfully submitted,

JONES DAY                                      COOLEY GODWARD KRONISH LLP

 /s/ Nicholas M. Miller                          /s/ Jeffrey L. Cohen
Richard H. Engman (RE 7861)                    Jay R. Indyke (JI 0353)
222 East 41st Street                           Cathy Hershcopf (CH 5875)
New York, New York  10017                      Jeffrey L. Cohen (JC 2556)
Telephone:  (212) 326-3939                     1114 Avenue of the Americas
Facsimile:  (212) 755-7306                     New York, New York  10036
                                               Telephone:  (212) 479-6000
 - and –                                       Facsimile:  (212) 479-6275

Nicholas M. Miller (NM 7516)
North Point                                    Attorneys for the Committee
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Attorneys for the Debtors

**<u>EXHIBIT A</u>**

CLI-1497557v8

**<u>EXHIBIT B</u>**

CLI-1497557v8

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| Levitz Home Furnishings, Inc. *et al*., | : | Case No. 05-45189 (BRL) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| (Levitz Home Furnishings, Inc.) | : | (Case No. 05-45189 (BRL)) |
| (Levitz Furniture Company of the Midwest, Inc.) | : | (Case No. 05-45212 (BRL)) |
| (Levitz Furniture Company of Washington, Inc.) | : | (Case No. 05-45213 (BRL)) |
| (Levitz Furniture Corporation) | : | (Case No. 05-45194 (BRL)) |
| (Levitz Furniture, LLC) | : | (Case No. 05-45198 (BRL)) |
| (Seaman Furniture Company, Inc.) | : | (Case No. 05-45214 (BRL)) |
| (Seaman Furniture Company of Pennsylvania, Inc.) | : | (Case No. 05-45216 (BRL)) |
| | : | |

## NOTICE OF PROPOSED DISTRIBUTION AND DISMISSAL OF CHAPTER 11 CASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. **Except as set forth herein, no funds are available for distribution to creditors.**

2. On October 11, 2005 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. By an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. On October 21, 2005, the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors in the above-captioned cases (the "Committee"), pursuant to section 1102 of the Bankruptcy Code.

3. On December 14, 2005 the Bankruptcy Court entered an order (Docket No. 514) (the "Sale Order") approving the sale (the "Sale") of substantially all of the Debtors' assets to PLVTZ, LLC ("PLVTZ"). The Sale proceeds were insufficient to satisfy all of the Debtors' obligations to secured parties, and, as a result of the Sale Order, the Debtors have ceased retail operations, no longer have any employees and are in the process of winding up their affairs. **The Debtors do not have any cash on hand and will be unable to make a distribution of any estate assets to unsecured creditors**.

4. However, as part of the Sale, and at the Committee's insistence, PLVTZ agreed to carveout certain funds that PLVTZ otherwise would have been entitled to receive, which funds have been held in a General Unsecured Creditors Trust (the "GUC Trust") for the benefit of unsecured creditors. The term sheet establishing the GUC Trust is annexed as Exhibit "C" to the Sale Order and identifies a range of sharing opportunities to fund the GUC Trust from proceeds that otherwise would be distributed to PLVTZ.

5. As a result of these sharing opportunities, the GUC Trust has accumulated approximately $580,000, for the benefit of unsecured creditors (the "GUC Funds"). The Committee estimates that unsecured claims against the Debtors are approximately 2250 in number and $250 million in amount. Accordingly, the Committee believes that the GUC Funds are sufficient to make a *pro rata* distribution of less than 0.3%, or three tenths of one percent, to unsecured creditors.

6.  On October [__], 2007, the Bankruptcy Court entered an order (Docket No. ___) (the "Distribution and Dismissal Procedures Order") that, among other things, (a) approved procedures to identify outstanding unsecured claims against the Debtors; (b) authorizes a *pro rata* distribution from the GUC Funds (the "Distribution"); and (c) subject to certain conditions, authorizes the dismissal of the Debtors' chapter 11 cases after the Distribution.  You are receiving this Notice pursuant to the Distribution and Dismissal Procedures Order.

7.  Your claim is identified on the attached schedule (the "Schedule"), which reflects the amount shown on the Debtors books and records or the amount identified on any proof of claim you may have filed with the Bankruptcy Court.  The Schedule indicates whether your claim is disputed, unliquidated or contingent.

8.  If you agree with the amount shown on the Schedule, and if your claim is not listed as contingent, unliquidated or disputed, then you should NOT respond to this Notice.

9.  You also should NOT respond to this notice if your claim (a) arose on or after the Petition Date; (b) is based on ownership of stock in one of the Debtors; or (c) is based on indemnity or contribution and you are a former director or officer of one of the Debtors.

10. If, however, you (a) disagree with the amount shown on the Schedule, or (b) your claim is listed as contingent, unliquidated or disputed, then you must submit a written response and supporting documentation according to the instructions on the claim form so that it is received by the GUC Trustee by mail or email, as set forth below, on or before **December 14, 2007** (the "Objection Deadline"):

> GUC Trustee
> Walker, Truesdell & Associates
> 380 Lexington Avenue
> Suite 1014
> New York, NY  10168
>   -or-
> sroth@walkertruesdell.com

11. In addition, if you object to the ultimate dismissal of the Debtors' chapter 11 cases, then you must submit a written response to the GUC Trustee, stating the reasons for the objection, on or before the Objection Deadline.

12. If you do not respond to this Notice on or before the Objection Deadline, then (a) disputed, unliquidated and contingent claims will be disallowed in their entirety and (b) undisputed, liquidated and non-contingent claims will be allowed in the amounts indicated on the Schedule.  Any claims disputes and any disputes regarding the ultimate dismissal of the Debtors' chapter 11 cases will be submitted to the Bankruptcy Court for resolution pursuant to the terms of the Distribution and Dismissal Procedures Order.

13. After all claims disputes have been resolved, the GUC Trustee will make the Distribution on account of allowed claims.  As noted above, the Distribution is anticipated to be less than three tenths of one percent of the allowed claim amount.  The GUC Trustee will not make *de minimus* distributions of less than $25.

14. You may obtain a proof of claim form, if necessary, and copies of the Distribution and Dismissal Procedures Order and any related court documents by (a) accessing the website of the Debtors' claims and noticing agent at www.kccllc.com/Levitz; or (b) contacting the GUC Trustee, Walker Truesdell & Associates, at 212-687-1811.

[Bar Code]

In re Levitz Home Furnishings, Inc., *et al.*
United States Bankruptcy Court
Southern District of New York
Jointly Administered Case No. 05-45189 (BRL)

| Creditor | Claim # | Unliquidated* | Contingent* | Disputed* | Claim Amount** |
|---|---|---|---|---|---|
| | | | | | |

NOTE:    The Committee anticipates that a distribution of less than 0.3%, or three tenths of one percent, of the total allowed claim amount will be made to holders of allowed claims.  No distributions of less than $25 will be made.

*    If your claim is identified as unliquidated, contingent or disputed and you fail to file a timely written response, then your claim will be disallowed and you will receive no distribution from the GUC Trust.  If your claim is identified as unliquidated, contingent or disputed, then you must file a proof of claim or other written response and any supporting documentation with the GUC Trustee so that it is <u>received</u> by no later than **December 14, 2007** (the "<u>Objection Deadline</u>") at:

> GUC Trustee
> Walker Truesdell & Associates
> 380 Lexington Avenue
> Suite 1014
> New York, NY  10168
>      -or-
> sroth@walkertruesdell.com

You must submit this schedule with any written response.

**    If you disagree with the amount shown on this schedule, then you must file a proof of claim or other written response and any supporting documentation with the GUC Trustee no later than the Objection Deadline.  Failure to file a timely proof of claim or other written response with the GUC Trustee before the Objection Deadline will result in (a) allowance of the claim in the amount identified above or (b) if unliquidated, contingent, or disputed, disallowance of the claim in its entirety.

**<u>EXHIBIT C</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
In re                                                             :    Chapter 11
                                                                  :
Levitz Home Furnishings, Inc. *et al*.,                          :    Case No. 05-45189 (BRL)
                                                                  :
                                                                  :    (Jointly Administered)
              Debtors.                                            :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
(Levitz Home Furnishings, Inc.)                                   :    (Case No. 05-45189 (BRL))
(Levitz Furniture Company of the Midwest, Inc.)                   :    (Case No. 05-45212 (BRL))
(Levitz Furniture Company of Washington, Inc.)                    :    (Case No. 05-45213 (BRL))
(Levitz Furniture Corporation)                                    :    (Case No. 05-45194 (BRL))
(Levitz Furniture, LLC)                                           :    (Case No. 05-45198 (BRL))
(Seaman Furniture Company, Inc.)                                  :    (Case No. 05-45214 (BRL))
(Seaman Furniture Company of Pennsylvania,                        :    (Case No. 05-45216 (BRL))
Inc.)                                                             :

## NOTICE OF DISTRIBUTION AND PROPOSED DISMISSAL OF CHAPTER 11 CASES

Pursuant to the Order, Pursuant to Sections 105(a), 349 and 1112(b) of the Bankruptcy Code, (A) Approving Procedures for the Distribution of Trust Funds to Unsecured Creditors and the Dismissal of the Debtors' Chapter 11 Cases; and (B) Granting Certain Related Relief (Docket No. __) (the "Distribution and Dismissal Procedures Order"), entered on October **[__]**, 2007, the Official Committee of Unsecured Creditors in the above-captioned cases (the "Committee"), hereby submits the following Notice of Distribution and Proposed Dismissal:[1]

1.    On October 11, 2005, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By an order entered on October 12, 2005, the Debtors' chapter 11 were consolidated for procedural purposes only and administered jointly.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Distribution and Dismissal Procedures Order.

CLI-1497557v8

2.      The Distribution and Dismissal Procedures Order, among other things, (a) approved procedures to identify and resolve outstanding unsecured claims against the Debtors (the "Claims Resolution Process"); (b) authorized a *pro rata* distribution from the GUC Trust to Allowed Unsecured Claimants (the "Distribution"); and (c) subject to certain conditions, authorized the dismissal of the Debtors' chapter 11 cases after the filing of this Notice of Distribution and Proposed Dismissal.

3.      Upon completion of the Claims Resolution Process, the GUC Trust consisted of approximately $_____ in cash (the "GUC Funds").  Through the Claims Resolution Process, all unsecured claims were resolved, and **[number]** unsecured claims totaling $_____ were allowed against the Debtors' estates.

4.      Accordingly, on **[date]**, the GUC Trustee made the Distribution, pursuant to the terms of the Distribution and Dismissal Procedures Order.  The Distribution:  (a) consisted of all of the GUC Funds, including all accrued interest (after paying any winddown costs); and (b) was made to the Allowed Unsecured Claimants identified on the attached Schedule A.

5.      The Distribution and Dismissal Expenses totaled $_____, as set forth on the attached Schedule B.

**6.      [A charitable donation of $____ was made to _____, pursuant to the Distribution and Dismissal Procedures Order.]**

7.      All Leases have been assumed, assumed and assigned or rejected.

8.      As of the date of this Distribution and Proposed Dismissal Notice, all U.S. Trustee quarterly fees have been paid in full.

9.      Pursuant to the terms of the Distribution and Dismissal Procedures Order, the Committee will submit to the Court, within five business days of this Notice of Distribution

and Proposed Dismissal, a proposed order providing for the dismissal of each of the Debtors'

chapter 11 cases.

Dated: _____, 2008
       New York, New York


                                          COOLEY GODWARD KRONISH LLP


                                          _____
                                          Jay R. Indyke (JI 0353)
                                          Cathy Hershcopf (CH 5875)
                                          Jeffrey L. Cohen (JC 2556)
                                          1114 Avenue of the Americas
                                          New York, New York  10036
                                          Telephone:  (212) 479-6000
                                          Facsimile:  (212) 479-6275


                                          Attorneys for the Committee

## **EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :
In re                                       :    Chapter 11
                                            :
Levitz Home Furnishings, Inc. et al.,       :    Case No. 05-45189 (BRL)
                                            :
      Debtors.                              :    (Jointly Administered)
                                            :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

**ORDER, PURSUANT TO SECTIONS 105(c), 349 AND 1112(b) OF THE BANKRUPTCY
CODE, (A) APPROVING PROCEDURES FOR THE DISTRIBUTION OF TRUST
FUNDS TO UNSECURED CREDITORS AND THE DISMISSAL OF THE
<u>DEBTORS' CHAPTER 11 CASES AND (B) GRANTING CERTAIN RELATED RELIEF</u>**

Upon the Joint Motion of the Debtors and the Official Committee of Unsecured

Creditors, Pursuant to Sections 105(c), 349 and 1112(b) of the Bankruptcy Code, for the Entry of

an Order (A) Approving Procedures of the Distribution of Trust Funds to Unsecured Creditors

and the Dismissal of the Debtors' Chapter 11 Cases and (B) Granting Certain Related Relief

(Docket No. __) (the "<u>Motion</u>")[1] of Levitz Home Furnishings, Inc., individually and together

with its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>"), and the Official

Committee of Unsecured Creditors in the above-captioned cases (the "<u>Committee</u>", and together

with the Debtors, the "<u>Movants</u>"), for the entry of an order pursuant to sections 105(a), 349 and

1112(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") (i) approving certain

Distribution and Dismissal Procedures and (ii) granting such other and further relief as the Court

deems just and proper; and this Court having reviewed the Motion and having conducted a

hearing on the Motion on October __, 2007, at which time the Movants and all parties in interest

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning thereto in the Motion.

were given an opportunity to be heard; and it appearing that the notice of the Motion having been

given to (a) the Special Service List established pursuant to this Court's Administrative Order

Establishing Case Management and Scheduling Procedures (Docket No. 73) and (b) all parties

that have requested service of papers pursuant to Bankruptcy Rule 2002; and the Court finding

that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (b) notice of the Motion and the

opportunity for a hearing thereon were adequate and appropriate under the circumstances and no

other notice need be given, (c) the legal and factual bases set forth in the Motion constitute just

cause for the relief granted herein, and (d) the requested relief in the Motion is in the best

interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause

appearing therefore, it is

ORDERED, ADJUDGED AND DECREED, THAT:

1.     The Motion is hereby GRANTED as set forth herein.

2.     The Distribution and Dismissal Procedures are hereby APPROVED.

3.     Walker Truesdell & Associates (the "GUC Trustee") is hereby appointed trustee of
the GUC Trust.

4.     The GUC Trustee is authorized to distribute the GUC Funds to Allowed Unsecured
Claimants pursuant to the terms of this Order.

5.     The GUC Trustee, with the assistance of counsel to the Committee, shall identify
the Allowed Unsecured Claimants pursuant to the following claims resolution
process (the "Claims Resolution Process"):

a.  Within five business days after the entry of this Order, the Committee and the

GUC Trustee shall serve the Potential Claimants identified on Exhibit A to

this Order with the Proposed Distribution Notice, substantially in the form

attached hereto as Exhibit B.

b.  As set forth on the attached Exhibit B, the Proposed Distribution Notice shall,

at a minimum

- provide general case information, including the amount of the anticipated distribution;
- include a separate schedule with the Potential Claimant's claim information, including the proposed claim amount and whether the claim is disputed, contingent or unliquidated;
- give instructions for filing an objection to the Proposed Distribution Notice, including the mailing address for the GUC Trustee and the objection deadline; and
- include contact information in the event the Potential Claimant has questions regarding the Claims Resolution Process or requires hard copies of claim forms or related court documents.

c.  If a Potential Claimant or other party-in-interest (i) disputes any claim

information contained in the Proposed Distribution Notice, (ii) wishes to

assert a claim that is not reflected on the Proposed Distribution Notice or (iii)

objects to or seeks reconsideration of the relief granted in this Order, such

Potential Claimant or other party-in-interest (the "Objecting Party") must mail

or e-mail its claim or objection with documentation supporting its claim or

objection (each a "Claim Objection") on or before December 14, 2007

(the "Objection Deadline") to the GUC Trustee at Walker Truesdell &

Associates, 380 Lexington Avenue, Suite 1014, New York, New York 10168

(Attn: Sharon Roth; or e-mail: sroth@walkertruesdell.com).  In any Claim

Objection, the Objecting Party must state the grounds with particularity.

d.  The GUC Trustee and counsel to the Committee shall review all Claim

Objections and supporting documentation timely submitted by an Objecting

Party and consult with the Objecting Party in order to attempt to resolve any

disputes regarding the Claim Objection.  If the GUC Trustee, counsel to the

Committee and the Objecting Party cannot agree on a resolution, then counsel

to the Committee shall notice the matter for hearing for ultimate determination

by the Court, which hearing shall take place on or before January 31, 2008.

e.  Any claim allowed pursuant to foregoing claims process shall be deemed an

"Allowed Unsecured Claim."  Holders Allowed Unsecured Claims

(collectively, "Allowed Unsecured Claimants") shall be the beneficiaries of

the GUC Trust, and (other than the Holdback set forth in paragraph 8, below)

the GUC Funds shall be paid *pro rata* to the Allowed Unsecured Claimants.

f.  Any Potential Claimant or other party-in-interest that does not timely file a

Claim Objection shall be barred from challenging the relief granted herein and

the treatment of the claims identified on the Proposed Distribution Notice.

6.  The GUC Trustee shall administer the GUC Trust as follows:

a.  The GUC Trustee, in its sole discretion, shall (i) make only a single

distribution of the GUC Funds and (ii) determine when a distribution from the

GUC Funds shall be made.

    b.   The GUC Trustee, in its sole discretion, may refrain from making any *de minimus* distribution that would result in a distribution of less than $25 to an Allowed Unsecured Claimant.

    c.   Any distributed checks that have not been claimed and/or cashed within 90 days after distribution of such check(s) (the "Check Cashing Period") shall be deemed void, and the corresponding claim shall be disallowed.

    d.   Any GUC Funds that remain after the Check Cashing Period expires shall be used to pay any Distribution and Dismissal Expenses that exceed the Holdback, if any, and thereafter shall be donated to a recognized charitable organization that (i) has no affiliation with the GUC Trustee or estate professionals, (ii) is dedicated in some way to improving the bankruptcy system or providing services to those in need of the bankruptcy process and (iii) is acceptable to both the GUC Trustee and counsel to the Committee.

7.    Pursuant to section 1112(b) the Bankruptcy Code, the Debtors' chapter 11 cases shall be dismissed without further court order upon the filing of the Notice of Distribution and Proposed Dismissal in substantially the form attached hereto as Exhibit C; provided, however, that all quarterly U.S. Trustee fees have been paid in full.

8.    The GUC Trustee shall be authorized to utilize up to $70,000 from the GUC Funds (the "Holdback") to pay Distribution and Dismissal Expenses.

9.    Notwithstanding anything to the contrary herein, the contested matter concerning

the proposed assumption and assignment of the non-residential real property lease

located in Anaheim, California, between PLVTZ and Wohl/Anaheim LLC shall

continue unaffected by entry of this Order.

10.    Notwithstanding section 349 of the Bankruptcy Code, prior Orders of the Court

shall survive dismissal of these cases.

11.    From and after the date of this Order, none of the Debtors, nor the Committee, and

none of the Debtors' and Committee's respective present or former directors,

officers, employees, members, attorneys, consultants, advisors, and agents (acting

in such capacity), shall have or incur any liability to any person for any act taken or

omitted to be taken in connection with or related to the formation, preparation,

dissemination, implementation, confirmation or consummation of the Motion, or

any contract, instrument, release or agreement or document created or entered into,

or any other act taken or omitted to be taken in connection with the Motion or this

Order (other than acts constituting willful misconduct or gross negligence or taken

in contravention of the Motion or the implementation of this Order).

12.    The Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or relating to the implementation of any Order of this Court

and to rule on the allowance of the interim and final compensation of professionals

retained in these cases.

Dated:    New York, New York
              _____, 2007

_____
THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE